JOSHUA D. HURWIT, IDAHO STATE BAR NO. 9527
UNITED STATES ATTORNEY
**ROBERT B. FIRPO, CALIFORNIA STATE BAR NO. 243991**
**ASSISTANT UNITED STATES ATTORNEY**
DISTRICT OF IDAHO
1290 W. MYRTLE STREET, SUITE 500
BOISE, ID  83702
TELEPHONE: (208) 334-1211
FACSIMILE:  (208) 334-9375
Email: Robert.Firpo@usdoj.gov

Attorneys for Plaintiff United States

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RACHEL PEAY-GOODMAN,<br><br>    Defendant. | Case No._____<br><br>**COMPLAINT** |

## COMPLAINT

The United States of America (United States) files this Complaint seeking judgment, civil penalties, and damages against Rachel Peay-Goodman (Defendant) for violations of the Controlled Substances Act (CSA), *see* 21 U.S.C. §§ 801-904, and the False Claims Act (FCA), *see* 31 U.S.C. § 3729.

### I.  JURISDICTION

1. This is an action brought by the United States for civil monetary penalties and damages authorized by the CSA and FCA for prohibited acts outlined in 21 U.S.C. § 842(a) and 31 U.S.C. § 3729(a).  *See also* 21 U.S.C. § 842(c) (authorizing civil penalties under the CSA); 31

COMPLAINT – 1

U.S.C. § 3729(a)(1) (authorizing civil penalties and other damages under the FCA).  The Court has jurisdiction over the subject matter of this suit pursuant to both 28 U.S.C. § 1355 and 28 U.S.C. § 1345.

## II. PARTIES

2. Plaintiff United States is a sovereign nation acting on behalf of the U.S. Department of Health and Human Services, Office of the Inspector General (HHS-OIG).

3. Defendant is a Nurse Practitioner and resident of Pocatello, Idaho.  Defendant resides within the jurisdiction of this Court and has, at all relevant times, practiced as a nurse practitioner in Idaho.

## III. VENUE

4. Venue is proper in the District of Idaho because (a) Defendant resides and/or conducts business within the District, (b) a substantial portion of the events giving rise to the action occurred in the District, and (c) the civil penalties sought by the United States accrued in the District.  *See* 28 U.S.C. § 1391(b); 28 U.S.C. § 1395(a).  Pursuant to District of Idaho Local Civil Rule 3.1, venue is proper in the District's Eastern Division.

## IV. CONTROLLED SUBSTANCES ACT

5. Congress passed the Controlled Substances Act (CSA) in 1970 after determining that the illegal distribution and use of controlled substances had "a substantial and detrimental effect on the health and general welfare of the American people."  21 U.S.C. § 801(2).

6. The CSA governs the manufacture, distribution, and dispensation of controlled substances in the United States.  A "controlled substance" is any drug or other substance included in schedule I, II, III, IV, or V of the CSA.  *See* 21 U.S.C. § 802(6).

7. Because one of the goals of the CSA is to prevent the diversion of drugs from legitimate to illegitimate channels, the CSA established a closed regulatory system in which it is unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA.

8. In order to track the legitimate dispensation of controlled substances, the CSA requires practitioners that wish to write prescriptions for controlled substances to register with the Drug Enforcement Administration (DEA). *See* 21 U.S.C. § 822(a)(2); 21 U.S.C. § 802(10) (definition of term "dispense"); *and also* 21 U.S.C. § 802(21) (definition of "practitioner"). Practitioners registered with the DEA to dispense controlled substances are authorized to dispense only to "the extent authorized by their registration," and must do so in conformity with the CSA. *See, e.g.,* 21 U.S.C. § 822(b); 21 C.F.R. § 1306.04.

9. A practitioner who writes a prescription for a controlled substance "dispenses" a controlled substance under the CSA. *See* 21 U.S.C. § 802(10).

10. Under the CSA, a prescription for a controlled substance is only valid and effective if it is issued for a legitimate medical purpose and by a practitioner acting in the usual course of professional practice. *See* 21 C.F.R. § 1306.04; *see also* Idaho Code § 37-2722; IDAPA 24.36.01, Rule 400 (noting nearly identical requirements for a prescription to be valid under Idaho State law). A prescription for a controlled substance that has not been issued for a legitimate medical purpose and is not issued by a practitioner acting in the usual course of professional practice is not a lawful or valid prescription under the CSA.

## V.  THE FALSE CLAIMS ACT

11. The FCA provides, in part, that any person that (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; or (2) knowingly makes,

COMPLAINT – 3

uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim, is liable to the United States for damages and penalties if that claim is presented to the United States.  *See* 31 U.S.C. §§ 3729(a)(1)(A)-(B).

12.     The purpose of the FCA is to provide restitution to the government for money taken from it by fraud and to make the government whole.

13.     Any person who violates the FCA is liable to the United States for a mandatory civil penalty for each violation of the FCA, as well for treble damages sustained by the United States with respect to each violation.  *See* 31 U.S.C. § 3729(a).

14.     For FCA civil penalties assessed after November 2, 2015, the current minimum mandatory civil penalty is $13,508 per violation and the maximum civil penalty is $27,018 per violation.  *See* 28 C.F.R. § 85.5; 31 U.S.C. § 3729(a).  For FCA violations that occurred prior to November 2, 2015, the minimum mandatory civil penalty is $5,000 per violation, with a maximum penalty of $11,000 per violation.  31 U.S.C. § 3729(a).

## VI.  FACTUAL BACKGROUND

15.     Defendant is licensed as a nurse practitioner by the Idaho State Board of Nursing and has been continuously licensed by this entity since before 2018.

16.     Between 2018 and 2021, Defendant practiced as a nurse practitioner in Pocatello, Idaho, at a medical clinic known as the Amerihealth Medical Center (Amerihealth).  Defendant wrote prescriptions for controlled substances as part of her practice at Amerihealth and was therefore a "practitioner" subject to the CSA.  *See* 21 U.S.C. § 802(21) (definition of "practitioner").

17.     Because Defendant wrote prescriptions for controlled substances as part of her practice, she was required to obtain a license from the State of Idaho and a registration number

from the DEA.  The DEA registered Defendant to prescribe controlled substances under DEA Registration # MP4605056.

18.     Defendant treated Medicare and Medicaid patients as part of her practice at Amerihealth.  After treating those patients, Defendant referred, submitted, and/or caused to be submitted claims for reimbursement to Medicare and Medicaid.  Defendant filled out superbills or other claims forms where she selected billing codes to facilitate the claims process.

19.     Defendant had no experience working as a pain specialist, treating pain management patients, or prescribing controlled substances to pain management patients when she accepted the job at Amerihealth.  Nevertheless, when Amerihealth hired Defendant as a nurse practitioner, Defendant agreed to see and treat pain management patients as part of a pain management practice at Amerihealth.  Defendant had never prescribed pain medications or controlled substances to pain management patients before beginning her work at Amerihealth.

20.     Between 2018 and 2019, and while working as a nurse practitioner at Amerihealth in Pocatello, Defendant saw Patient 1 for foot pain, tinnitus, anxiety and other ailments. Defendant wrote Patient 1 prescriptions for controlled substances to treat those conditions, including co-prescribing opioids, benzodiazepines, and sleeping medications for simultaneous use.

21.     Between 2018 and 2021, and while working as a nurse practitioner at Amerihealth, Defendant saw Patient 2 for chronic pain.  Defendant wrote Patient 2 prescriptions for controlled substances to treat those conditions, including prescriptions for opioids like oxycodone.  Defendant knew other providers also prescribed controlled substances to Patient 2 at the same time as Defendant, and that those other providers were prescribing benzodiazepines and sleeping medication that could react dangerously with opioids.  Defendant caused Medicare to be

billed for both the prescriptions that Patient 2 filled at pharmacies, and for office visits related to Defendant's treatment of Patient 2.

## VI.  CLAIMS FOR RELIEF

### CLAIM #1
### Violation of 21 U.S.C. § 842(a)(1)
### Dispensing controlled substances by means of invalid and unlawful prescriptions

22. Plaintiff incorporates by reference the allegations set forth above in paragraphs 1-21, as if set forth in full at this place.

23. Between February 17, 2019, and March 6, 2019, Patient 1 filled five prescriptions for controlled substances written by Defendant.  The prescriptions included two separate prescriptions for alprazolam, a prescription for lorazepam, a prescription for zolpidem tartrate, and a prescription for oxycodone.  Oxycodone is a schedule II controlled substance, while lorazepam, alprazolam, and zolpidem tartrate are schedule IV controlled substances.

24. Each of the five prescriptions filled by Patient 1 between February 17, 2019, and March 6, 2019, lacked a legitimate medical purpose and was written by Defendant outside the usual course of professional practice in violation of the CSA.  *See* 21 C.F.R. § 1306.04(a).  As such, the prescriptions were invalid and the dispensation of controlled substances pursuant to those prescriptions was unlawful.

25. Defendant violated 21 U.S.C. § 842(a)(1) when she dispensed controlled substances by means of invalid prescriptions on five separate occasions as described in this Complaint.  *See also* 21 C.F.R. § 1306.04.  The CSA authorizes civil penalties for up $78,312 for each violation of 21 U.S.C. § 842(a)(1).  *See* 21 U.S.C. § 842(c); 28 C.F.R. § 85.5.

## CLAIM #2
## Violation of 31 U.S.C. § 3729(a)
## Causing the submission of a false claim to Medicare

26. Plaintiff incorporates by reference the allegations set forth above in paragraphs 1-25, as if set forth in full at this place.

27. On May 21, 2020, Defendant saw Patient 2 at the Amerihealth clinic in Pocatello, Idaho. While the visit was ostensibly so that Defendant could provide pain management services to Patient 2, in reality the principal purpose of the visit was so that Defendant could provide Patient 2 with prescriptions for controlled substances to manage pain.

28. After seeing Patient 2 on May 21, 2020, Defendant caused an office visit claim to be submitted to Medicare so that Defendant and/or Amerihealth could be reimbursed for services provided. Medicare paid $69.74 for the claim.

29. The office visit claim Defendant caused to be submitted to Medicare related to services provided to Patient 2 on May 21, 2020, was false. The claim was false because Defendant billed the government for a pain management visit even though Defendant knew that she lacked the experience, training, or ability to provide pain management services. Defendant also knew that the principal purpose of the visit was so that she could write Defendant prescriptions for controlled substances, as opposed to provide Defendant comprehensive pain management services which she was not qualified to provide. As a result, the government was billed for worthless services that Defendant was not qualified to provide.

30. Had Medicare known Defendant lacked the experience, training, and ability to provide pain management services, and that Defendant submitted a claim based on providing pain management services that she was not qualified to provide, Medicare would not have paid for the claim. For this reason, the falsity of the claim was material to payment.

COMPLAINT – 7

31. Medicare was damaged in the amount of $69.74.

32. When Defendant submitted the false office visit claim, she violated 31 U.S.C. § 3729(a). The United States is entitled to a civil penalty and treble damages to remedy the violation. *See* 31 U.S.C. § 3729(a).

## **PRAYER FOR RELIEF**

Based on the allegations described above, Plaintiff United States seeks the following:

(a) A declaration that Defendant violated the CSA and FCA as alleged in the Complaint;

(b) Judgment, civil penalties, and damages against Defendant for each violation of the CSA and FCA as authorized by 21 U.S.C. § 842(c), 31 U.S.C. § 3729(a), and outlined in the claims above;

(c) Interest at the legal rate from the date of entry of judgment; and

(d) Any other relief as this Court deems just and proper.

JOSHUA D. HURWIT
UNITED STATES ATTORNEY
By:

   */s/ Robert B. Firpo*
ROBERT B. FIRPO
Assistant United States Attorney

COMPLAINT – 8